NOT FOR PUBLICATION
File Name:  05a0469n.06
Filed:  June 7, 2005

NO. 04-5445

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JOSE LEE, by his Mark and by his
next kin, Arthur Lee, and Audrey Lee,

          **Plaintiff-Appellant,**

v.

ROBERT HEFNER, City of Paducah
Police Officer in his Individual and
Official Capacity, et al.

          **Defendants-Appellants.**

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

BEFORE:  SUHRHEINRICH, BATCHELDER and GIBSON[*], Circuit Judges.

    **SUHRHEINRICH, J.,**  Plaintiff Jose Lee, by his Mark and by his Next Kin, Arthur Lee and Audrey Lee, appeal from the order of the district court granting Defendants' motion for summary judgment on Plaintiff's excessive force claim brought under 42 U.S.C. 1983.  We **AFFIRM.**

**I.**

    Plaintiff Jose Lee is a middle-aged, disabled black man living in Paducah, Kentucky, with his parents, Arthur and Nancy.  Jose is severely autistic, with a mental age similar to that of a three year old child.  His actions are rote, and he has no vocal means of communication.  One of Jose's

---

[*]The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

daily rituals is to take the trash out to the receptacles along the alley in the back of their house. The alley that runs behind the Lee home has several trash cans.

On the evening of March 23, 2002, at approximately 6:25 p.m., at dusk, Jose took a small bag of trash to the alley. Paducah Police Officer Robert Hefner was on routine patrol in his squad car in the area of Eighth and Madison Streets at the same time. Hefner was on patrol in Zone 1, purportedly the highest crime activity zone in the City.[1] Hefner had made two recent drug arrests within three blocks of Lee's residence.

Hefner spotted a man, Jose, in the alley that runs parallel to Madison and Monroe Streets. In his police report he explained:

> I was on routine patrol and saw a man wearing dark clothing standing in the alley. As I approached the alley while driving by the subject turned around and stopped walking. When I saw this I notified central dispatch that I was going to be out speaking with a subject. When I got closer to the subject he took off running in the alley. I followed subject in my patrol car and got closer to him and asked his (sic) to stop running and let me talk to him. I then exited my patrol car and ran after subject and grabbed his left elbow and asked him to stop and let me talk to him. The subject never stated anything and swung around with his arm to strike me and pulled away and kept running. At this time I chased the subject a little further down the alley and grabbed ahold of the subject's coat and placed the subject on the ground behind a residence.

Hefner further reported that two individuals approached and identified themselves as Jose's guardians. They explained that Jose was autistic, and asked Hefner to release him. Hefner waited until his backup arrived, however. These officers recognized Jose and he was released.

The Lees filed a written complaint with the Paducah Police Department. The Paducah Police Department's police officer Advisory Board determined that Hefner's actions did not violate any

---

[1]The City of Paducah is split into thirteen zones for law enforcement purposes.

policies or procedures, and that Hefner failed to complete a Vehicle/Pedestrian Stop Form and a Use of Force Report as required by departmental policy. No further action was taken against Hefner.

On November 5, 2002, Plaintiffs filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants Robert Hefner, in his individual and official capacities, and the City of Paducah, violated Jose's constitutional rights. They also alleged tortious behavior in violation of Ky. Rev. St. § 413.120(7). Plaintiffs requested compensatory damages for Jose Lee in the amount of $1.2 million, and for Arthur and Audrey Lee in the amount of $100,000 each, and punitive damages and attorney's fees.

On December 12, 2003, Defendants moved for summary judgment. On March 18, 2004, the district court granted the motion and dismissed all other pending motions as moot. Although it felt that the question was "an extremely close one," the district court concluded that there was no Fourth Amendment violation because Hefner had reasonable suspicion. Initially the district court noted several factors that gave rise to Officer Hefner's suspicions.

> First, Mr. Lee was wearing dark clothes and standing in an alley. Second, the incident occurred within Zone 1, which Officer Hefner considered a "high crime" area. Third, Mr. Lee turned about twice when Officer Hefner drove near him in his cruiser, and when Officer Hefner asked him to stop he may or may not have began to run–at least, Mr. Lee did not stop and continued moving away from Officer Hefner.

The court remarked that whether Officer Hefner had reasonable suspicion to detain Lee depended on what stage the Court measured the reasonableness of Hefner's suspicions, and it divided the encounter into two time periods: before Hefner asked Lee to stop, and after. Regarding the first time period, the district court concluded that "no objectively reasonable suspicion of Mr. Lee existed." However, as to the second time period, after Hefner asked Lee to stop, the court found that "Mr. Lee's actions–his attempt to avoid Officer Hefner after the latter spoke to him–were

sufficient, barely, to provoke reasonable suspicion under the Supreme Court's holding in *Wardlow* [*v. Illinois*, 528 U.S. 119 (2000)] dealing with unprovoked flight."

The district court also concluded that, assuming a constitutional violation had occurred, Officer Hefner's actions were not objectively unreasonable in light of *Wardlow*, and that Hefner was therefore entitled to qualified immunity. The district court also rejected Plaintiffs' excessive force claim, stating that "[a]ssuming that Officer Hefner had sufficient objective reasonable suspicion to detain Mr. Lee, or that his good faith belief in doing so was objectively reasonable, there is no question that his subsequent actions were objectively reasonable," citing *Graham v. Connor*, 490 U.S. 386 (1989). The court granted summary judgment on Plaintiffs' Fourteenth Amendment claims, holding that Plaintiffs' had not demonstrated an unlawful taking nor shown a violation of a privacy right recognized under the Due Process Clause. The court also ruled that Plaintiffs lacked standing to assert a Fourteenth Amendment claim based on procedural due process concerns because there was no causal connection between Officer Hefner's failures and cognizable injuries under the Fourteenth Amendment.

Lastly, the court rejected Plaintiffs' claims based on the tort of outrage, because Hefner's acts were directed at Jose, not Arthur or Audrey, and the Kentucky courts have not recognized a cause of action which allows recovery for outrageous conduct directed at a third person. The court ruled that Jose could not maintain such a claim either, because his claim for emotional distress would be properly pled under traditional common low torts of assault and battery.

The court granted summary judgment to Defendant Police Chief Randy Bratton, in his individual and official capacities, on Plaintiffs' conspiracy claim, based on its conclusion that the Lees did not have any constitutional claims. The court dismissed Plaintiffs' failure to train claims

against Bratton, finding that "[t]he training Hefner received in Illinois and Kentucky appears to be well with normal expectation governing police departments." The court granted summary judgment to the City of Paducah and various officials in their official capacities on the grounds that Plaintiffs had not demonstrated a city policy or custom "inimical to their constitutional rights." The court entered judgment on March 18, 2004. Plaintiffs filed their notice of appeal on April 16, 2004.

Plaintiffs make four arguments on appeal.

## II.

This Court reviews the grant of summary judgment *de novo*. Summary judgment is appropriate if there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## A.

First, Plaintiffs argue that there are two issues of material fact which render summary judgment inappropriate on the Fourth Amendment unreasonable seizure claim. First, they point out that it is disputable as to whether Jose can or would have actually run. Arthur Lee testified that Jose does not run. "He walks real fast. And if there is something behind him, he would have walked faster. But break into a run, no." They claim that there is also disagreement as to whether the officers' actions were reasonable in light of the circumstances. In support, Plaintiffs note that they offered the opinion of a police expert, A. Jack May, who indicated that Hefner's conduct towards Lee was objectively unreasonable, that Hefner had no articulable suspicion to justify a stop, and that Hefner "provoked" Lee into flight by bearing down on him with his vehicle and yelling out of the window.

Even if these facts are disputed, Plaintiffs' claim is foreclosed by *Wardlow.* As the Supreme Court noted in *Wardlow*, a brief encounter with a police officer on a public street is governed by *Terry v. Ohio*, 392 U.S. 1, 30 (1968). *Terry* holds that police officers who have "reasonable suspicion" of criminal activity may detain and pat down the individual suspected of illicit activity. In *Wardlow*, the Supreme Court held that unprovoked flight in a high-crime area gave rise to reasonable suspicion justifying a *Terry* stop and frisk. *Wardlow*, 528 U.S. at 124 (stating that "[h]eadlong flight–wherever it occurs–is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such").

In *Wardlow*, police officers converged in a four-car caravan in an area known for heavy narcotics trafficking. *Id.* at 124. As they passed, the officers observed respondent Wardlow standing next to a building holding an opaque bag as they passed. *Id.* at 121-22. When he saw the officers, Wardlow began to run. *Id.* at 122. The officers eventually caught up with Wardlow, patted him down, and discovered a handgun. Wardlow was arrested for carrying a concealed deadly weapon. The Supreme Court upheld the search under *Terry*, ruling that the officers were justified in suspecting that Wardlow was involved in criminal activity and therefore investigating further. *Id.* at 125. The Supreme Court emphasized that "it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police." *Id.* at 124.

In this case, Officer Hefner was also patrolling in a high crime area when he observed Jose engaging in unusual behavior. Although Jose did not immediately break into a run when he first saw Hefner's vehicle, like the respondent in *Wardlow*, Hefner testified, and the district court found that Jose "turned about twice" when Hefner approached in his vehicle. At this point Officer Hefner

likely had reasonable suspicion to briefly detain Jose under *Wardlow*. The district court erred in concluding that Officer Hefner did not have reasonable suspicion at this point, because as in *Wardlow*, the presence in a high crime area, plus evasive behavior, can constitute reasonable suspicion. *Wardlow*, 528 U.S. at 124-25. Furthermore, this Court has held that "[a] law enforcement officer does not violate the Fourth Amendment merely by approaching an individual, even when there is no reasonable suspicion that a crime has been committed." *United States v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998) (en banc). Thus, no seizure occurred at that point.

However, it is undisputed that Jose fled after Hefner spoke to him. Although Plaintiffs dispute that Jose could actually run, they did not dispute the fact that he could walk very fast. Audrey also testified that if he walked down to the end of the alley and saw a police cruiser, "he would have turned and walked toward home if anybody approached him," including a vehicle.[2] In short, the pace at which Jose retreated does not distinguish this case from *Wardlow*-the key fact is undisputed that Jose, upon observing a strange vehicle, Officer Hefner's patrol car, retreated. In short, as the district court held, Officer Hefner had reasonable suspicion to detain Jose, under *Wardlow*.

Even if a constitutional violation had occurred, Hefner was entitled to qualified immunity. The qualified immunity analysis is well-established. First, the court must determine whether a constitutional violation has occurred. If yes, then the court must decide whether "the right was clearly established" at the time of the events at issue, such that a reasonable official would

---

[2]Furthermore, Arthur, in response to being asked if Jose can run, testified, "I suppose he can." He added that "But Jose doesn't run. Jose walks real fast. And if there was something behind him, he would have walked faster. But break into a run, no."Audrey testified, in response to being asked why Jose ran from Hefner, that "He would run or move away from anybody."

understand that what he is doing violates that right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Weaver v. Shadoan*, 340 F.3d 398, 406-07 (6th Cir. 2003); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc).

If Officer Hefner's actions amounted to an unreasonable seizure not based on articulable suspicion, he is nonetheless entitled to qualified immunity. As the district court noted, Hefner's actions were not objectively unreasonable "in light of the allowances made by the Supreme Court in *Wardlow*." In *Wardlow*, Hefner was presented with suspicious circumstances, in addition to Jose's retreat. It would not be unreasonable for an officer to conclude that these behaviors, although slightly different than the precise fact pattern of *Wardlow*, gave rise to reasonable suspicion under *Terry* and *Wardlow*. In other words, it would not have been unreasonable for Officer Hefner to conclude that Jose's initial retreat upon seeing vehicle, and flight upon being called by Hefner, justified the *Terry* stop. The district court did not err in granting summary judgment on this claim.

**B.**

Plaintiffs also challenge the district court's dismissal of their Fourth Amendment excessive force claim. They argue that there was no reasonable suspicion to hold Jose, and that Officer Hefner's actions were excessive and unnecessary. In support of the latter argument, they point to Jack May's report. According to May, Officer Hefner's acts of forcing Jose to the ground, placing a knee on his back, and then using a wrist lock and handcuffing "far exceeded the norms of universally accepted and approved Force Continuum," in this case because Jose's actions were not an immediate threat of injury to the officer.

"Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or

threat of force thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry*). *Graham* outlines three factors to consider in determining whether the officer used excessive force: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat of safety to others; and (3) whether the suspect is actively resisting arrest or attempting to flee. *Id.* at 396. The reasonableness of an officer's actions must be judged from the perspective of a reasonable officer on the scene, and not by 20/20 hindsight. *Id.*

Here, as discussed above, Jose's undisputed actions were such that Hefner could have reasonably suspected Jose of having committed a crime. Further, Hefner could have reasonably concluded that Jose was resisting arrest and attempting to flee. Furthermore, Plaintiffs' own expert, May, conceded that the wrist lock is "a low level of force with minimal probability of injury." Thus, as the district court found, assuming Hefner had sufficient objective reasonable suspicion to detain Lee, his subsequent actions were objectively reasonable.

## C.

Next, Plaintiffs maintain that the district court erred in granting summary judgment to Defendants on their Fourteenth Amendment Due Process and Equal Protection claims. Plaintiffs claim a Fourteenth Amendment violation in the City's failure to provide adequate training on the use of force and the mechanics of arrest and detention, as well as identifying mentally ill or incompetent persons. Plaintiffs also claim that Chief Randy Bratton and others conspired with Officer Hefner to violate their due process rights, and that he failed as Chief of Police to ensure that the officers were properly and adequately trained. In support, they point to their expert, Jack May, who stated that the Department's policy on use of force is "devoid of any directives and guidelines for effecting an investigatory stop and detention."

However, by his own admission, May failed to review a complete copy of the police department's policies and procedures before rendering his opinion, stating that he only reviewed the Paducah Police Department's policy on "Use of Force." May admitted that he had not reviewed Hefner's college transcript, which reflected that he majored in criminal justice, or his training transcripts from the Illinois Department of Corrections, the Illinois Police Academy, the Kentucky Police Academy, or the Paducah Police Department before he rendered his opinion that Hefner was inadequately trained. Thus, Plaintiffs failed to present adequate evidence to indicate that Jose's due process rights were violated as a result of an alleged conspiracy between Chief Bratton and Hefner.[3] For this reason alone, their challenge to the district court's ruling must be rejected.

Plaintiffs assert that their Equal Protection rights were violated because Jose was treated differently than a similarly situated white individual, David Oakes, Plaintiffs' neighbor. Oakes was in the alley moving furniture at the same time Jose was in the alley, but Hefner did not try to question him. Plaintiffs have not established that Oakes was "similarly situated" to Jose. *See Farm Labors Organ. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 533-34 (6th Cir. 2002) (holding that "[a] claimant can demonstrate discriminatory effect by naming a similarly situated individual who was not investigated or through the use of statistical or other evidence which 'addresses the crucial question of whether one class is otherwise similarly situated'"). Plaintiffs provided no evidence that Hefner even saw Oakes until after he had stopped Jose, at which time Oakes asked if he could help him. Further, Oakes was at the other end of the alley, a block away, when Hefner first

---

[3]Defendants filed a motion in limine to exclude Plaintiffs' expert witness, as he was not qualified to render the opinions and had failed to review all relevant material before rendering his opinions. The district court denied the motion as moot when it granted Defendants' motion for summary judgment.

observed Lee. Thus, Plaintiffs failed to make a prima facie showing that similarly situated persons were treated differently. *See Stemler v. Florence*, 126 F.3d 856, 873 (6th Cir. 1997). Summary judgment on this claim was appropriate.

**D.**

Plaintiffs claim that the district court erred in granting summary judgment as to their claims of outrage. They allege that Defendants' conduct toward Jose, as well as toward Audrey Lee and Arthur Lee, rises to the level of outrageous conduct. Plaintiffs assert this incident has destroyed Jose's ability maintain his usual outside rituals, making his already limited world even smaller. Audrey contends that this incident caused her to feel humiliation and powerlessness, for which she has sought mental health treatment. She further alleges that her reputation as the only African American female defense attorney practicing in Paducah has suffered. Arthur claimed that he also suffered humiliation, embarrassment, and emotional frustration as a result of the Defendants' conduct towards him.

Kentucky courts recognize the tort of outrage cause of action, but have applied it only sparingly. *Craft v. Rice*, 671 S.W.2d 247, 250 (Ky. 1984). In *Craft*, the Supreme Court adopted the *Restatement (Second) of Torts* § 46(1), which provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990) (citing *Craft* and § 46(1) of Restatement (Second)). As the district court held, subsection (2) of § 46, which provides for liability to third persons who are present at the time, has not been adopted by the Kentucky courts. *Allen v. Clemons*, 920 S.W.2d 884, 886 (Ky. Ct. App. 1996); *Mineer v. Williams*,

82 F.Supp. 2d 702, 707 (E.D. Ky. 2000). Arthur and Audrey are therefore not entitled to recover.

Jose's claim of tort of outrage also fails.

> [W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for emotional distress in those instances must be had under the appropriate common law action.

*Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. Ct. App. 1993); *cf. Brewer v. Hillard*, 15 S.W.3d 1, 8 (Ky. Ct. App. 1999) (stating that "there is a clearly developed paradigm for outrage: when actions or contact is intended only to cause extreme emotional distress in the victim[;] . . . [o]utrage requires conduct intended to cause emotional distress in the victim"); *see generally Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788-92 (Ky. 2004).

As the district court held, it is clear that Jose's distress should have been pled under traditional common law claims of assault and battery. Further, there is no proof in the record that Officer Hefner intended to cause extreme emotional disturbance. Summary judgment was properly granted to defendants.

## III.

Needless to say, the incident at issue was upsetting and unfortunate. However, it is quite clear that Officer Hefner had no prior knowledge of Jose's condition, and performed within the bounds of an objectively reasonable police officer. No constitutional violation occurred.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.