NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0226n.06

No. 08-6365

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Apr 12, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES |
| | ) | DISTRICT COURT FOR THE WESTERN |
| GRADY STITTIAMS, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**BEFORE:** **KEITH, MERRITT, and MARTIN, Circuit Judges.**

**PER CURIAM.** This case arises out of defendant Grady Stittiams' stop and subsequent

arrest by Officer Raoul Gonzalez for being a felon in possession of a firearm in violation of 18

U.S.C. § 922(g). At issue before the court is Stittiams' appeal of the trial court's denial of his

motion to suppress all evidence arising from the allegedly unlawful stop, notably the gun he was

carrying and his statements admitting such. For the reasons discussed below, we **AFFIRM** the

district court's denial of Stittiams' motion to suppress.

**FACTUAL BACKGROUND**

On October 9, 2007, Stittiams left his home and proceeded to the residence of a friend who

lived at 6235 Arctic Cove in Millington, Tennessee. Stittiams arrived there with the intention of

having his hair braided and cut. Approximately ten other individuals had also gathered in a common

1

area outside the residence. Some of these individuals were having their hair braided and cut while others had gathered to play cards. At some point, a dispute broke out amongst five of the individuals. Four of the individuals allegedly began to physically assault the fifth individual. Stittiams played no role in the altercation. Shortly thereafter, an unnamed individual called the police reporting an armed altercation at 6235 Arctic Cove.

Approximately twenty-five minutes after the call had been placed, three police cars arrived at the residence on Arctic Cove. Officer Raoul Gonzalez, one of the officers present, had responded to disturbance calls from the area on at least three prior occasions. Gonzalez, along with a number of other officers stepped out of his vehicle and began to approach the group of gathered individuals. In response, some of the individuals began to approach the officers while others remained standing or sitting. Stittiams at or about this time began to walk away from the group. He specifically alleges that he did so at the request of a friend who needed a guard for the clippers that were being used to cut hair. According to both Stittiams and the government, Stittiams was the sole individual to walk away from the group.

Gonzalez, seeing Stittiams walk away from the group, began to follow and call after him. The parties dispute exactly what Gonzalez said, but it is undisputed that Gonzalez asked him to stop. Stittiams ignored Gonzalez's initial call and continued walking towards the trailer. Upon arriving at the trailer, he began to walk up the trailer's stairs. At this point, Gonzalez called out to Stittiams a second time. The parties again dispute exactly what Gonzalez said. Stittiams alleges that Gonzalez stated: "You better not open that door or I am going to shoot you." [Tr. 44]. Conversely,

Gonzalez alleges that he yelled: "Hey man, come here." [Tr. 9]. In response, Stittiams turned around, put his hands up in the air and began walking towards Gonzalez.

Once Stittiams reached Gonzalez, Gonzalez asked him if there was anything he (the officer) should know about. At this point, Stittiams admitted that he had a pistol in his waistband. While Stittiams kept his hands in place, Gonzalez walked Stittiams over to his squad car. Once they reached Gonzalez's squad car, Gonzalez handcuffed Stittiams – thereby arresting him – and removed the gun from his waistband.

On January 21, 2008, a federal grand jury in the Western District of Tennessee returned an indictment charging Stittiams with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On May 15, 2008, Stittiams filed a motion to suppress the pistol and his statements disclosing the presence of the pistol. During an evidentiary hearing, on July 10, 2008, the district court heard arguments on the motion. The court concluded that Gonzalez's initial stop of Stittiams was supported by reasonable suspicion and, thus, was lawful. The court specifically cited the facts that the officers were responding to a call reporting an armed altercation, Stittiams was the only one of the persons gathered who began to walk away when the police approached, and he ignored the police officer's request to stop.

On July 25, 2008, Stittiams pled guilty to the underlying offense. However, as a condition of his plea agreement, he reserved the right to appeal the court's ruling as to his motion to suppress. Thereafter, Stittiams timely appealed the district court's ruling.

No. 08-6365, *United States of America v. Grady Stittiams*

## STANDARD OF REVIEW

When reviewing a district court's denial of a motion to suppress evidence, the district court's factual findings are examined for clear error, and its conclusions of law are subject to de novo review. *United States v. Jenkins*, 124 F.3d 768, 771-72 (6th Cir. 1997). The evidence is reviewed in the light most favorable to the district court's conclusions. *Id.* at 772. "A factual finding is clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Blair*, 524 F.3d 740, 747 (6th Cir. 2008) (internal quotation marks and citation omitted).

## ANALYSIS

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Evidence recovered from an illegal search is inadmissible. *Weeks v. United States*, 232 U.S. 383, 398 (1914). For the same reason, evidence recovered indirectly from an illegal search or seizure is also inadmissible as "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (internal quotation marks and citation omitted); *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920).

As noted, the sole issue before the court is whether Gonzalez lawfully stopped Stittiams. The parties devote the entirety of their briefs towards arguing whether reasonable suspicion supported the stop. However, implicit in each party's argument is an assumption as to when, in fact, the stop occurred. This is important as the facts Gonzalez was aware of differ depending upon when the stop happened. Accordingly, before we can address whether the stop was lawful, we must determine at what point Stittiams was seized for Fourth Amendment purposes.

4

I.      **The Stop Occurred When Stittiams Acceded to Gonzalez's Demand.**

In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court explained that an investigatory stop occurs when police use some form of coercion: "Obviously, not all personal intercourse between policemen and citizens involve seizures of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." *Id.* at 20 n.16 (internal quotation marks omitted). The test is whether, considering all of the circumstances, "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 436 (1991). Additionally, in those circumstances in which a suspect is stopped absent the intentional application of physical force, there must also be submission to the show of authority: "[T]here is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." *Brendlin v. California*, 551 U.S. 249, 254 (2007); *see also California v. Hodari D.*, 499 U.S. 621, 626 n.2 (1991)

It is clear that Gonzalez's stop of Stittiams occurred when Gonzalez, chasing after Stittiams, demanded that Stittiams stop and not when Gonzalez handcuffed Stittiams, as the government assumes.[1] Courts have repeatedly found that when an officer gives chase to a suspect while demanding that the suspect stop and the suspect does stop, the suspect has been subjected to a stop

---

[1] The district court found more credible the officer's testimony that he simply asked Stittiams to approach him as opposed to Stittiams' testimony that Gonzalez threatened to shoot. Although we need not decide who was correct as a stop occurred under either circumstance, it seems at least questionable that Stittiams would have turned around and put his hands in the air if Gonzalez did not threaten to shoot. This suspicion is heightened by the fact that Stittiams ignored Gonzalez's first request to simply stop.

No. 08-6365, *United States of America v. Grady Stittiams*

for the purposes of the Fourth Amendment. *United States v. Smith*, 594 F.3d 530, 539 (6th Cir. 2010) ("Once Officer Putnick asked Smith to stop, a reasonable person would not have felt free to leave and the interaction turned into a *Terry* stop."); *Northrop v. Trippett*, 265 F.3d 372, 380 (6th Cir. 2001) (finding that the defendant had been subjected to a Fourth Amendment seizure where he sought to leave the area, one officer directed another officer to stop him, and the officers asked him to produce identification); *Manley v. Paramount's Kings Island*, 299 F. App'x 524, 527 (6th Cir. 2008) ("Even if the shining of the flashlight did not constitute a 'show of authority,' chasing [the defendant] through the parking lot arguably did. And Manley acquiesced in stopping in the course of the guard's pursuit to answer questions.").

Accordingly, the only relevant circumstances we may consider in assessing the reasonableness of the stop were those of which Gonzalez was aware when he called to Stittiams for the second time.

## II.    The Stop Was Supported by Reasonable Suspicion.

In order for an investigatory stop and search to be valid, the officer's stop must be based on specific, articulable facts creating reasonable suspicion that a crime has been committed. *Terry*, 392 U.S. at 21; *see also United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993) (stating that an officer can conduct an investigatory detention or "*Terry* stop" if they can "point to 'specific and articulable facts' which justify reasonable suspicion that a suspect has been or is about to be involved in criminal activity" (quoting *United States v. Sokolow*, 490 U.S. 1, 12 (1989)). "Under *Terry* . . . where a law enforcement officer lacks probable cause, but possesses a reasonable and articulable suspicion that a person has been involved in criminal activity, he may detain the suspect briefly to

6

investigate the suspicious circumstances." *United States v. Bentley*, 29 F.3d 1073, 1075 (6th Cir. 1994) (internal citation omitted).

It is undisputed that Gonzalez was aware of the following facts when he called after Stittiams for the second time asking him to stop: 1) the area was a high-crime area to which Gonzalez had been called on at least three prior occasions; 2) the police had received a call regarding an armed disturbance occurring at the area in question; 3) upon arriving at the scene, every individual remained where they were or approached the arrived officers, but Stittiams began to walk away towards the trailer; and 4) Stittiams, rather than stopping when Gonzalez asked him to stop, looked back towards Gonzalez and kept walking away from him.

This case presents circumstances similar to those the Supreme Court considered in *Illinois v. Wardlow*, 528 U.S. 119 (2000). In *Wardlow*, the Supreme Court held that a defendant's evasive and unprovoked flight, along with his presence in a high-crime area, aroused sufficient, reasonable suspicion to lawfully stop the individual and conduct a pat-down. *Id.* at 124.

Stittiams attempts to distinguish *Wardlow* on two grounds. First, Stittiams argues that the sole circumstances supporting his stop were the armed disturbance call and Stittiams' choice to walk away from the officers towards the trailer home. As noted above, this argument overlooks a number of other significant facts, notably Stittiams' refusal to respond to the officer's call and the area's dangerous history. Second, and more importantly, Stittiams posits that we should pay little attention to the fact Stittiams walked away from Gonzalez and then subsequently ignored his request to stop as Stittiams was simply going to the home to retrieve a guard for the clippers; i.e. Stittiams was simply carrying on with non-crime related affairs as opposed to fleeing from the scene. Stittiams

7

misinterprets the appropriate question when determining whether Gonzalez had a reasonable, articulable suspicion. While a defendant can create any number of innocent explanations to justify his actions, the appropriate question is not what he actually intended to do, but rather whether his actions, viewed from a reasonable officer's viewpoint, indicated flight from a crime scene, criminal activity or some other suspicious circumstance. *United States v. Luqman*, 522 F.3d 613, 617 (6th Cir. 2008). Given the fact that Stittiams was the sole individual to leave the area, he did so only after the police arrived and that he ignored Gonzalez's initial request to stop, instead looking back and continuing to walk away, Gonzalez could have reasonably concluded that Stittiams was fleeing from the police. *See United States v. Davis*, 331 F. App'x 356, 361 (6th Cir. 2009) (concluding that the defendant attempted to flee from the police because even though he did not run, he picked up his pace in a manner consistent with flight and did not respond to the officer's commands to stop).

Although this case is closer than many, the Sixth Circuit has found that similar circumstances support a finding of reasonable suspicion. *See Smith*, 594 F.3d at 539 ("[T]he officers were justified in making an investigatory *Terry* stop . . . under the totality of the circumstances, which included: (1) the emergency 911 call; (2) Smith's efforts, with his head down, to push past the officers and exit the building as the officers entered; (3) that these events took place in a high-crime area, whose history the officer was personally aware of; (4) the very early hours of the morning; and (5) Smith's vague responses to the officers' questions); *Lee v. Hefner*, 136 F. App'x 807, 811 (6th Cir. 2005) ("Officer Hefner was . . . patrolling in a high crime area . . . . Although [the defendant] did not immediately break into a run when he first saw Hefner's vehicle . . . [he] 'turned about twice' when Hefner approached in his vehicle. At this point Officer Hefner likely had reasonable suspicion . .

No. 08-6365, *United States of America v. Grady Stittiams*

. .”); *United States v. Helm*, 85 F. App’x 475, 477 (6th Cir. 2004) (finding reasonable suspicion

where the defendant “was parked next to [a closed building], it was 9:00 p.m. at night, [the officer]

could tell that the car was occupied, there had been many burglar-alarm runs to the . . . building in

the previous six months, [the suspect] departed the parking lot as soon as [the officer] drove by, the

suspect drove in a manner that struck the officer as attempting to avoid her.”); *United States v.*

*Connally*, Nos. 91-6401, 6440, 6441, 1993 U.S. App. LEXIS 1090 *1, *5-7 (6th Cir. Jan. 15, 1993)

(finding the following facts sufficient to establish reasonable suspicion: "the officers knew this was

a high drug trafficking area; that they had seen drug dealing taking place here before; that the

pedestrian had thrown something in the van upon seeing the police; and that the pedestrian quickly

walked away and the van quickly pulled away.").

Stittiams, in response, cites this Court’s recent ruling in *United States v. Johnson*, 620 F.3d

685 (6th Cir. 2010). In *Johnson*, we rejected an officer’s claim that he had reasonable suspicion to

stop the defendant where: 1) the defendant was in a high crime area; 2) it was 4:00 a.m.; 3) the

officers were responding to a 911 call; 4) upon arriving the officers saw the defendant already

walking away from the scene; 5) when called out to, the defendant did not stop; and 6) he was

carrying a bag, which he threw into a white car. In rejecting the government’s claim we emphasized

two points. First, we noted that the initial 911 call, while alleging suspicious activity, did not report

any criminal behavior. *Id.* at 693. Second, we emphasized that the defendant had already begun to

walk in a particular direction before the police’s arrival and merely continued to walk in that

direction, away from the police, after their arrival, notwithstanding their approach and call to him.

*Id.* at 694. This case is clearly distinguishable on both grounds. Here, the 911 call specifically

9

reported illegal activity – a fight in which one of the individuals had a weapon. Additionally, Stittiams began to walk away only after the officers arrived, thereby, in part, creating the reasonable belief that he was evading the officers.[2]

Our holding in *Johnson*, as well as Stittiams' basic assertion that a person does not create reasonable suspicion by simply walking away from an officer or refusing to respond to an officer's request to converse in the absence of specific allegations of criminal activity are both undeniably correct. *Johnson*, 620 F.3d at 694 ("[T]here was nothing independently suspicious about [the defendant] *continuing* to walk toward the white car when [the officers] approached." (emphasis added)); *United States v. See*, 574 F.3d 309 (6th Cir. 2009) (holding that two individuals sitting in a car in a parking lot at night was not by itself sufficient to create reasonable suspicion); *Jacobs v. Village of Ottawa Hills*, 5 F. App'x 390 (6th Cir. 2001). However, where the officer is in an area where crime is prevalent, he is personally aware of this history, the officer is responding to a specific call reporting a crime involving a weapon, and an individual is seen taking evasive behavior in response to the police's arrival, the circumstances together establish reasonable suspicion. Thus, Stittiams arguments fall short when applied to the facts of his case.

### CONCLUSION

Accordingly, we, hereby, **AFFIRM** the district court's denial of defendant Grady Stittiams' motion to suppress.

---

[2] The lack of either: 1) a call reporting criminal activity or 2) the suspect's movement away from the scene in response to the police's arrival would likely undercut a finding of reasonable suspicion. That said, as both are present in the instant case, we need not address the matter fully here.