NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 17a0567n.06

Case No. 16-2594

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DERRICK THOMAS, | ) | **FILED** |
| | ) | Oct 06, 2017 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CITY OF EASTPOINTE, | ) | MICHIGAN |
| | ) | |
| Defendant, | ) | |
| | ) | |
| MARK BARR, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: GIBBONS, COOK, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. The camera may not lie, but it does not always tell the whole story. In this case, police dashboard cameras captured an encounter between Derrick Thomas and Officer Mark Barr. But the grainy footage depicts only some of the story, and the parties dispute the rest. When Thomas filed a Section 1983 action alleging that the police used excessive force, Officer Barr moved for summary judgment on qualified-immunity grounds. The district court denied Officer Barr's motion and determined that a reasonable jury could find that he had violated Thomas's clearly established constitutional rights. Officer Barr now appeals.

I.

It was an ordinary day:  Derrick Thomas and his cousin, Antoine Clements, relaxed, played cards, and watched television with their girlfriends.  But sometime after midnight, things took a turn for the worse.  Clements's girlfriend accused him of being unfaithful, and the two began to argue.  The lovers' quarrel escalated when Clements stormed out of the house.  In response, his girlfriend tore off her shirt as though "she was ready to fight."  R. 32-6, at 48.  And when Clements returned to the living room, he mistook her rage for infidelity:  His topless girlfriend stood next to his cousin.  The argument soon spilled outside.

Neighbors heard the commotion.  And four of them made emergency calls to report the "crazy fight" in the middle of the street.  R. 30, Pg. ID 520, 05-04-2013_04.00.40.8a_-_911-1_(Voice).WAV, at 00:14–15.  Officers Mark Barr and Jeffery Menzer responded to the scene with their dash cams rolling and spotlights illuminated.  As the officers exited their vehicles, Clements and Thomas were still yelling at one another.  The officers believed they had been fighting.  Both officers repeatedly ordered Clements and Thomas to "get on the ground," but the men did not comply.  Officer Barr says Clements and Thomas "acted like [the officers] weren't even there."  R. 32-3, at 15.

So the officers split up:  Officer Menzer walked toward Clements and Officer Barr toward Thomas.  Officer Barr continued to order Thomas to the ground, but Thomas did not comply.  And when Officer Barr was about ten feet away from Thomas, he realized he could not see Thomas's hands.  Concerned that Thomas might be armed, Officer Barr fired his projectile taser without warning.

Thomas collapsed to the ground.  He felt some part of Officer Barr's body collide with his back and then felt handcuffs on his elbow and wrist.  He says the cuffs were painful and that

he later complained about them to Officer Barr. Officer Barr disputes this account. But the dash-cam audio reveals that as Thomas sat in the back of Officer Barr's patrol car, he said something that sounds like, "Sir, my arms hurt. My arms are tired." *See* R. 30, Pg. ID 522, at 4:26:45. Later, Thomas appears to ask, "Can you take these cuffs off? My wrist is bleeding." *Id.* at 4:42:48. One way or another, Thomas was ultimately taken to the hospital and treated for a fractured elbow.

Thomas filed suit, alleging that Officer Barr used excessive force in tasing and handcuffing him. Officer Barr claimed he was entitled to qualified immunity. The district court disagreed, and Officer Barr now appeals. This court has jurisdiction to review the district court's judgment only to the extent that "it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). But to the extent that Officer Barr disputes the facts that Thomas may or may not be able to prove at trial, and whether those facts were sufficient to survive summary judgment, we lack jurisdiction. *Johnson v. Jones*, 515 U.S. 304, 313 (1995).

## II.

In this qualified-immunity case, we have two questions to consider: (1) whether Officer Barr violated Thomas's constitutional rights when he tased and handcuffed him; and, if so, (2) whether those rights were clearly established at the time of Officer Barr's actions (here, May 2013). *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). We consider these issues de novo. *O'Malley v. City of Flint*, 652 F.3d 662, 667 (6th Cir. 2011). But the facts we may take into account are limited. We can consider only the facts that were knowable to Officer Barr at the time of the incident. *White v. Pauly*, 137 S. Ct. 548, 550 (2017) (per curiam). And if any of those facts are disputed, we look first to the dash-cam recording. *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015). If the recording does not clear things up, we then construe disputed

facts in the light most favorable to Thomas, the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378–80 (2007).

A.

Before asking whether Officer Barr violated Thomas's rights, it makes sense to ask whether those rights were clearly established at the time of the incident. The reason is simple: If Thomas's rights were not clearly established, Officer Barr is entitled to qualified immunity. So we turn first to a "particularized" determination based on the facts at hand. *Pauly*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). May an officer tase someone he reasonably perceives to be ignoring his commands and walking away?

This circuit—and several others—have drawn the line at the suspect's "active resistance." *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 509–10 (6th Cir. 2012) (noting the law in the Sixth, Eighth, Tenth, and Eleventh Circuits). If the suspect was actively resisting, use of a taser to subdue him was reasonable. If not, then tasing was unreasonable. *Id.*; *see also Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495–96 (6th Cir. 2012) (collecting cases showing the active resistance distinction). We have found active resistance where a suspect physically struggles with police, threatens or disobeys officers, or refuses to be handcuffed. *Cockrell*, 468 F. App'x at 495; *see, e.g.*, *Hagans*, 695 F.3d at 511 ("out of control" suspect that forcefully resisted arrest); *Foos v. City of Delaware*, 492 F. App'x 582, 589 (6th Cir. 2012) (suspect behaved "erratically and irrationally"); *Caie v. W. Bloomfield Twp.*, 485 F. App'x 92, 96–97 (6th Cir. 2012) (suspect physically resisted handcuffs). But when a suspect is "compliant or ha[s] stopped resisting," the law is clearly established that using a taser constitutes excessive force. *Hagans*, 695 F.3d at 509; *see, e.g.*, *Kijowski v. City of Niles*, 372 F. App'x 595, 599–600 (6th Cir. 2010) (suspect sitting in his truck "not causing any trouble"); *Roberts v. Manigold*, 240 F.

App'x 675, 676 (6th Cir. 2007) (one officer had suspect "completely pinned" while other officer used taser).

This case does not fit cleanly into either camp. Officer Barr arrived on the scene to respond to emergency calls reporting an assault. He did not personally witness any violence. But following the officers' arrival, Thomas walked away from the officers without saying a word. The dash-cam video shows that Officers Barr and Menzer told Thomas to "get on the ground" several times prior to tasing him. R. 30, Pg. ID 521, 601_Front Camera 00:25–38; *see also id.*, 494_Front Camera 00:28–40. And though Thomas claims he never heard the officers' commands, we review only those facts that were "knowable" to Officer Barr at the time of the incident. *Pauly*, 137 S. Ct. at 550. Officer Barr's commands were clearly audible, and Thomas's purported inability to hear him was not knowable. So we are left to consider whether, under the circumstances as they appeared to Officer Barr, clearly established law made it unreasonable for him to tase Thomas. *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").

On the one hand, Thomas was not verbally or physically aggressive toward Officer Barr. So this case differs from the active-resistance cases in which we found that tasing the suspect did not constitute excessive force. On the other hand, the facts indicate that Thomas was not entirely compliant either: He appeared to ignore police commands to get on the ground and instead walked away. Thomas's actions thus fall somewhere in the middle.

We do not stand in this gray area alone. In *Cockrell*, this court concluded that nonviolent flight does not fit neatly into the active-resistance camp. 468 F. App'x at 496–97. One might argue that Thomas was not fleeing—he was simply walking in a direction opposite the officers.

But a suspect who ignores an officer's order to stop and walks away can "reasonably" be considered to flee, even where the suspect does not run. *United States v. Stittiams*, 417 F. App'x 530, 535 (6th Cir. 2011); *see also United States v. Davis*, 331 F. App'x 356, 360 (6th Cir. 2009) (concluding that a suspect attempted to flee, even though he did not run, because he "pick[ed] up the pace" and ignored police commands). So even though Thomas's actions may not look like flight in the ordinary sense of the word, they constitute "flight" under the law. And this court has not yet addressed whether tasing a suspect in flight violates his clearly established rights. *But see Goodwin v. City of Painesville*, 781 F.3d 314, 326 (6th Cir. 2015) (suggesting that a command to "get on the ground" would make it clear to a suspect that the officer intended to apprehend him). This unresolved question provides all the answer that we need: How the law applied to this set of facts was not "beyond debate" in May 2013. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (holding that officers are entitled to qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate").

Thomas argues that Officer Barr should have warned him prior to deploying the taser. But however prudent it may have been for Officer Barr to warn Thomas, no clearly established law required him to do so. *Cf. Cockrell*, 468 F. App'x at 498–99 (Cole, C.J., concurring) (acknowledging that no clearly established law required an officer to warn the suspect prior to tasing but suggesting that a failure to do so amounts to excessive force). And in the absence of clearly established law, Officer Barr is entitled to qualified immunity.

In reaching the opposite conclusion, the district court relied on this circuit's opinions in *Kent*, *Goodwin*, and *Eldridge*. That reliance was problematic for two reasons. First, none of these cases had been decided at the time Officer Barr tased Thomas. Judicial decisions cannot serve as sources of "clearly established" law before they are written. *Pearson*, 555 U.S. at 232

("[T]he court must decide whether the right at issue was 'clearly established' *at the time of defendant's alleged misconduct*." (emphasis added)). Second, these cases are different from the present case in important ways. *Kent* and *Goodwin* both involved plaintiffs who were tased in their homes after verbally refusing to comply with officers' commands. *Kent v. Oakland Cty.*, 810 F.3d 384, 387–89 (6th Cir. 2016); *Goodwin*, 781 F.3d at 318–19. And in both, the court explicitly relied on the heightened protection that the Fourth Amendment accords to the "most sacred of spaces": the home. *Kent*, 810 F.3d at 394; *see Goodwin*, 781 F.3d at 326–27. Moreover, in *Kent*, the plaintiff had his hands up and his back against the wall when he was tased, 810 F.3d at 391–92; and in *Goodwin*, the plaintiff simply refused the officer's request to come outside, 781 F.3d at 323–24. Here, the location and Thomas's behavior distinguish the facts in crucial ways. Thomas was in public, not at home. *See Kyllo v. United States*, 533 U.S. 27, 31 (2001) ("'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961))); *Payton v. New York*, 445 U.S. 573, 589–90 (1980) (distinguishing between privacy protections in the home and in a public place). And rather than merely refusing the officers' commands, Thomas appeared to be walking away and ignoring them.

*Eldridge* is also different. There, the officer tased a visibly "lethargic driver who clutched his car's steering wheel and provided unhelpful responses to the officers' queries." *Eldridge v. City of Warren*, 533 F. App'x 529, 530 (6th Cir. 2013). It turned out that the driver was diabetic and suffering a hypoglycemic episode. *Id.* at 531. The court found that tasing the driver was unreasonable because the suspect's "noncompliance was not paired with any signs of

verbal hostility or physical resistance." *Id*. at 535. Not so here: Thomas's noncompliance with Officer Barr's commands was paired with his physical act of walking away.

The law is not clearly established that an officer cannot tase a suspect who refuses to comply with a police officer's commands and walks away. We cannot say then that "every 'reasonable official would have understood'" that tasing Thomas under these circumstances would violate his Fourth Amendment rights. *Al-Kidd*, 563 U.S. at 741 (quoting *Anderson*, 483 U.S. at 640). Officer Barr is entitled to qualified immunity on this claim.

B.

After Officer Barr tased Thomas, he handcuffed him. Thomas says Officer Barr fractured his elbow in the process and used excessive force in violation of the Fourth Amendment. *See Burchett v. Kiefer*, 310 F.3d 937, 944–45 (6th Cir. 2002) (noting that applying "too tight" handcuffs can constitute excessive force). Officer Barr disagrees. But his disagreement boils down to a dispute with Thomas's version of the facts. Specifically, Officer Barr quibbles with four key facts: (1) whether Officer Barr handcuffed Thomas's elbow; (2) whether Thomas complained of pain; (3) whether Officer Barr ignored Thomas's complaints; and (4) whether Thomas was injured. He claims that the facts were insufficient to survive summary judgment. But Officer Barr does not offer any *legal* grounds for reversing the district court on this claim. And when we review a district court's denial of qualified immunity on interlocutory appeal, we lack jurisdiction over such fact-based challenges. *Johnson*, 515 U.S. at 313; *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609–10 (6th Cir. 2015). We therefore decline to consider Officer Barr's appeal of the handcuffing claim.

III.

We **REVERSE** in part.  Officer Barr is entitled to qualified immunity with regard to his use of the taser.  But we **DISMISS** the remainder of the appeal for lack of jurisdiction.